UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STACEY ALLIGOOD,

      Plaintiff,

v.                           Case No. 8:23-cv-1677-TPB-NHA

SUNSHINE BUSINESS
MANAGEMENT, INC, et al,

      Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Stacey Alligood moves for default judgment against Defendant BKR Holdings Group Inc., and asks the Court to enter default judgment in her favor and award her compensatory damages in the amount of $211,642.49, plus pre-judgment and post-judgment interest, and attorneys' fees and costs. Doc. 48. I find that Ms. Alligood has pleaded facts sufficient to support a prima facie case against BKR on Count I, and I respectfully recommend that the Court grant in part her Motion for Default Judgment. Specifically, I recommend that the Court direct the Clerk to enter final judgment in Ms. Alligood's favor and against Defendant BKR Holdings on Count I in the amount of $170,844.54, plus prejudgment interest on that amount accruing from July 27, 2023 to the date of the judgment calculated at the rate specified in New Jersey Court Rule

4:42–11(a), plus an attorney's fee, with post-judgment interest accruing at the usual and lawful rate for federal court judgments thereafter.

## I.    Background

Ms. Alligood is an individual domiciled in Hernando County. 2d Am. Compl. (Doc. 44) ¶ 3. BKR is a New Jersey corporation. *Id.* ¶ 7.

Ms. Alligood owns a timeshare that allows her to occupy, for at least 10 weeks per year, a one-bedroom ocean-front unit at Over Water Bungalow Palafitos in Mexico. *Id.* ¶ 12; Doc. 44-1. In early September 2021, Ms. Alligood received phone calls from Defendant Sunshine Business Management, Inc., in which Sunshine purported that a man named Miguel Angel Losada Moran was interested in leasing her timeshare. 2d Am. Compl. (Doc. 44) ¶¶ 13, 16–17. Sunshine asked Ms. Alligood to enter a contract leasing her timeshare to Mr. Losada Moran and represented that Ms. Alligood would pay no closing costs but would compensate Sunshine and BKR with a percentage of the lease proceeds. *Id.* ¶¶ 18, 19.

In October 2021, Ms. Alligood, Mr. Losada Moran, BKR, and Sunshine executed an Exclusive Guaranteed Rental Agreement. *Id.*, ¶ 20; *see also* Doc. 44-1. The Exclusive Guaranteed Rental Agreement identified BKR as the "holding company," Sunshine as the "firm," Ms. Alligood as the "prospective lessor," and Mr. Losado Moran as the "prospective lessee." Contract (Doc. 44-1) at p. 1. In the Exclusive Guaranteed Rental Agreement, Ms. Alligood agreed

to lease to Mr. Losada Moran, in perpetuity, her ten weeks per year at the ocean-front unit in Mexico, for $69,000. *Id.* She agreed to pay Sunshine a $5,520 commission at closing. *Id.* The Exclusive Guaranteed Rental Agreement did not specify a closing date. *Id.*

On October 26, 2021, BKR contacted Ms. Alligood to request that she wire $3,900 related to a fee imposed by the Mexican government. 2d Am. Compl. (Doc. 44) ¶ 23. Sunshine and/or BKR assured her that she would be reimbursed for the fee at closing. *Id.* ¶ 25. Ms. Alligood wired the $3,900, paying a $45 wire fee, and the parties to the Exclusive Guaranteed Rental Agreement executed a "First Addendum" representing that that Ms. Alligood would be reimbursed that money at closing. *Id.* ¶¶ 26–31; First Addendum (Doc. 44-2) at p. 2.

Thereafter, BKR and/or Sunshine repeatedly contacted Ms. Alligood requesting that she pay additional fees that were needed to close the transaction, promising that she would be reimbursed at closing. *Id.* ¶¶ 32–36. Specifically, BKR and/or Sunshine requested that Ms. Alligood wire, and Ms. Alligood did wire, the following sums of money:

- $4,360.00 on December 10, 2021;

- $3,500.00 on December 21, 2021;

- $15,870.00 on January 12, 2022;

- $6,380.47 on March 9, 2022;

3

- $12,420.00 on March 24, 2022;

- $8,814.43 on April 25, 2022;

- $11,276.19 on May 12, 2022;

- $22,637.05 on July 5, 2022;

- $10,000.00 on July 13, 2022; and

- $17,000.00 on July 29, 2022.[1]

*Id.*, ¶¶ 37–38, 58; Final Addendum (Doc. 44-2) at p. 9.

In fronting the funds, Ms. Alligood incurred wire fees, as well as other charges, including loan fees and penalties for early withdrawal of retirement accounts. 2d Am. Compl. (Doc. 44) ¶¶ 39, 42. Before Ms. Alligood made each fee transfer, BKR and Sunshine assured her they would pay her at closing not only the closing fees but also the wire fees, and other charges and penalties. *Id.* ¶ 41. BKR and Sunshine's agreement to reimburse Ms. Alligood is

---

[1] Sunshine and/or BKR prepared another agreement titled Transfer of Liability Agreement (Doc. 44-3), which was signed by Sunshine, BKR, and Ms. Alligood on July 25, 2022. 2d Am. Compl. (Doc. 44) ¶ 55. In the Transfer of Liability Agreement Ms. Alligood agreed to wire $17,000 and then relinquish the trust account that owned her timeshare to Sunshine. *Id.* ¶ 57. After she did so, Sunshine agreed to pay her $194,597.49. *Id.* Although Ms. Alligood describes this as a separate agreement, the Transfer of Liability Agreement is reflected in the final addendum to the Exclusive Guaranteed Rental Agreement, which was executed two days after the Transfer of Liability Agreement and shows Ms. Alligood paying the $17,000 and being owed approximately $194,600 in addition to the reimbursement of that transfer. Doc. 44-2 at p. 9.

memorialized in a final addendum to the Exclusive Guaranteed Rental Agreement, which was executed on July 27, 2022. *Id.* ¶ 46; Doc. 44-2 at p. 9. That addendum specifies that Ms. Alligood had paid $170,844.54 in reimbursable fees and would receive that amount back at closing. Doc. 44-2 at p. 9. BKR and/or Sunshine repeatedly delayed the closing of the transaction, refusing to set a date for closing and ultimately never closing on the Exclusive Guaranteed Rental Agreement with its addenda. 2d Am. Compl. (Doc. 44) ¶¶ 48–50.

## II.    Procedural History

On July 27, 2023, Ms. Alligood filed this action. Compl. (Doc. 1). In her Second Amended Complaint, Ms. Alligood brought ten claims against each Defendant: (1) Breach of the Exclusive Guaranteed Rental Agreement and addendums, (2) Breach of the Transfer of Liability Agreement, (3) Civil Conspiracy, (4) Violation of the Florida Telemarketing Act, (5) Violation of the Telemarketing Sales Rule, (6) Fraud in the Inducement of a Contract, (7) Fraud, (8) Violation of Florida's Communications Fraud Act, (9) Conversion, and (10) Violation of Florida's Deceptive and Unfair Trade Practices Act. 2d Am. Compl. (Doc. 44).

Ms. Alligood served BKR on August 15, 2023, and served Sunshine on August 22, 2023. Docs. 13, 14. After Defendants failed to timely respond, Plaintiff moved for entries of Clerk's default under Federal Rule of Civil

Procedure 55(a). Docs. 20, 23. The Court granted those motions (Docs. 26, 28), and the Clerk entered default against both Sunshine[2] and BKR (Docs. 29, 30).

Ms. Alligood ultimately entered a settlement agreement with Sunshine, in which the two parties stipulated to a final judgment against Sunshine and in favor of Ms. Alligood in the amount of $211,642.49, plus pre-judgment and post-judgment interest (although the stipulation does not specify the claims on which the judgment is to be entered).[3] Docs. 34, 34-2. Ms. Alligood moved for default judgment against Defendant BKR. Doc. 40.

After reviewing Ms. Alligood's Amended Complaint (Doc. 6) and motion for final default judgment against BKR (Doc. 40), the Court found that the Amended Complaint failed to demonstrate the Court's jurisdiction and granted leave for Ms. Alligood to file a Second Amended Complaint. Doc. 43. Ms. Alligood did so on August 21, 2024 (Doc. 44), and the Court denied without prejudice the motion for default judgment based on the Amended Complaint

---

[2] Of note, after Ms. Alligood moved for Clerk's default against Sunshine, Sunshine appeared and filed an untimely answer. Doc. 25. The Court granted the Clerk's default given the non-discretionary language in Federal Rule of Civil Procedure 55(a), but invited Sunshine to move to set aside the default. Doc. 26.

[3] Given that no judgment has been entered against Sunshine, any risk of double recovery is not yet ripe.

(Doc. 45). Ms. Alligood then renewed her motion for final default judgment on September 25, 2024.[4] Doc. 48.

I held a hearing on the motion for default judgment on April 23, 2025 (Doc. 51), and, thereafter, Plaintiff submitted supplemental briefing (Doc. 55).

## III.  Standard of Review

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). A Clerk's default under Rule 55(a) deems a defendant to admit a plaintiff's well-pleaded allegations of fact. *Id.* at 1245 (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton*, 402 F.3d at 1278 (citation and quotations omitted).

So, notwithstanding entry of a Clerk's default, the Court's may enter a default judgment under Rule 55(b) only where the pleadings sufficiently support a judgment. *Id.* In deciding a motion for default judgment, the Court should assess the pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245

---

[4] No service was required on BKR because the Second Amended Complaint did not add any new claims for relief and BKR was already in default for failing to appear. Fed. R. Civ. P. 5(a)(2).

(citation omitted). In other words, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

If a plaintiff is entitled to default judgment, then the court must also consider whether the plaintiff is entitled to the relief it requests. The damages a plaintiff requests are not deemed proven simply by default; rather, the Court must still determine the amount and type of damages to award. *Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985).

If, to enter or effectuate judgment, it is necessary to conduct an accounting to determine damages, the court may conduct hearings or make referrals as it deems necessary. Fed. R. Civ. P. 55(b)(2). But damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph*, 777 F.2d at 1544); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a

hearing is unnecessary if sufficient evidence supports the request for damages).

## IV.   Analysis

### a.   Subject Matter Jurisdiction

Ms. Alligood asserts that the Court has diversity jurisdiction over this action. 2d Am. Compl. (Doc. 44) ¶ 9. Diversity citizenship exists where (1) the matter in controversy exceeds $75,000, exclusive of interest and costs, and (2) the parties are citizens of different states. 28 U.S.C. § 1332. Here, the Court has subject matter jurisdiction under 28 U.S.C § 1332 (a)(1) because the parties are completely diverse, and the amount in controversy exceeds $75,000. Ms. Alligood is a citizen of Florida, as she is domiciled in Hernando County with the intent to remain there. 2d Am. Compl. (Doc. 44) ¶ 3; *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (citation omitted) (holding an individual is a citizen of the state in which he or she is domiciled, and a "person's domicile is the place of his 'true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'"). Defendant Sunshine is a citizen of Colorado, as it is incorporated and has its principal place of business in that state. 2d Am. Compl. (Doc. 44) ¶ 5; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has

9

its principal place of business . . . ."). Defendant BKR is a citizen of New Jersey, as it is incorporated and maintains its principal place of business there. 2d Am. Compl. (Doc. 44) ¶ 7; *see also* 28 U.S.C. § 1332(c)(1). Because no Defendant shares citizenship with the Plaintiff, complete diversity is satisfied. Additionally, the Complaint alleges an amount in controversy exceeding $75,000, exclusive of interest and costs. 2d Am. Compl. (Doc. 44) ¶ 47. Because Ms. Alligood adequately pleaded her citizenship in the Amended Complaint, she has properly invoked diversity jurisdiction.

### b. Service of the Complaint

Next, Ms. Alligood has properly effected service on Defendant BKR. In seeking a default judgment, the plaintiff bears the burden of establishing proper service of the complaint. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). And, "[g]enerally, where service of process is insufficient, the court has no power to render judgment*." In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003).

Federal Rule of Civil Procedure 4(h)(1) governs the service of process on United States corporations. It authorizes service on a corporation in a manner consistent with the law of the state in which the district court is located or in which service is effected.

Service was attempted in New Jersey. Doc. 13. Under New Jersey law, a party effectuates service of process by serving a copy of the summons and complaint on "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation . . ." N.J. Ct. R. 4:4-4(a)(6). The officer can be served personally or "by leaving a copy [of the summons and the complaint] at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein." N.J. Ct. R. 4:4-4(a)(1).

Kevin Baker was BKR's president and CEO; his address was 57 Kent Avenue, Marlton, NJ 08053. Doc. 27-5. Mr. Baker and his wife, Rebecca Baker, co-owned the Kent Avenue residence. Doc. 27-6. Plaintiff served Rebecca Baker with the summons and Amended Complaint at the Kent Avenue residence on August 15, 2023. Doc. 13. The process server noted that Ms. Baker was approximately 50 years old. *Id.* Thus it appears that Plaintiff served BKR "by leaving a copy [of the summons and the complaint] at [a BKR officer's] dwelling place or usual place of abode with a competent member of the household of the

age of 14 or over then residing therein," in accordance with New Jersey law. *See* N.J. Ct. R. 4:4-4(a)(1), (6). BKR was properly served.[5]

Under Rule 12(a)(1)(A), BKR had until September 5, 2023—21 days after being served with the summons and amended complaint—to answer or otherwise respond. It did not. Thus, the Clerk's default against BKR (Doc. 29) was properly entered.

### c. Personal Jurisdiction

The Court has personal jurisdiction over BKR. In addition to ensuring proper service on a defendant, a court must also ensure it has personal jurisdiction over any defaulting defendants. The operative complaint alleges that BKR is a corporation incorporated in New Jersey with its principal place of business in New Jersey. 2d Am. Compl. (Doc. 44) ¶¶ 7–8.

The Eleventh Circuit uses a two-part test "in determining whether the exercise of personal jurisdiction [over] a non-resident defendant is proper." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass*, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005)). First, it determines "whether the exercise of jurisdiction would be appropriate under [the relevant] state's long-arm statute." *Id.*

---

[5] BKR is a corporation and not an infant, incompetent, or member of the military, so the additional requirements of Rule 55(b)(2) and the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, do not apply.

Second, it determines "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.*

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a nonresident defendant who engages in one of the acts listed in Section 48.193(1)(a) of the Florida Statutes. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). The Court's personal jurisdiction over a defendant on a single claim is sufficient to allow exercise of personal jurisdiction over other claims against the same defendant arising from the same actions. *See Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993). However, here, there are several bases on which the statute confers jurisdiction.

For example, one of Plaintiff's claims, conversion, is a tortious act, one of the acts over which the long-arm statute applies. Fla. Stat. § 48.193(1)(a)(2); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000). Under the long-arm statute, the tortious act must be committed within Florida; but "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (emphasis in original) (quoting *Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir.2008)); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209,

1216–17 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida).

Here, Plaintiff alleges that she is a citizen of Florida (2d Am. Compl. (Doc. 44) ¶ 3), that the nonresident BKR committed conversion by possessing her property (*id.* ¶ 140), and that Plaintiff suffered damages in Florida due to the conversion (*id.* ¶ 141). This is sufficient to confer jurisdiction under Florida's long-arm statute. The Court could also exercise jurisdiction over BKR based on Plaintiff's allegation that BKR breached the contract by failing to close the transaction, which would have required a payment to her in Florida, Compl. (Doc. 1) ¶ 77. Fla. Stat. § 48.193(1)(a)(7) (Florida court can exercise jurisdiction over a party who is alleged to have breached a contract in the state by failing to perform acts required by the contract to be performed in the state). Thus, multiple grounds support the exercise of jurisdiction over nonresident BKR under Florida's long-arm statute.

There is a "completely different analysis" as to whether the exercise of personal jurisdiction over BKR would violate the Due Process Clause of the Fourteenth Amendment. *Future Tech. Today*, 218 F.3d at 1250.

"The due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

relations.'" *Lovelady*, 544 F.3d at 1284 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Generally, the constitutional requirement is "satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe*, 326 U.S. at 316).

The Eleventh Circuit examines "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

The mere existence of a contract with a Florida resident alone does not establish minimum contacts with Florida. *Burger King v. Rudzewicz*, 471 U.S.

462, 479 (1985). But, the Eleventh Circuit has held that, for due process purposes, intentional torts can support the exercise of personal jurisdiction over a nonresident defendant who has no other contacts with the forum. *Lovelady*, 544 F.3d at 1285. In *Licciardello v. Lovelady*, the plaintiff, a nationally known entertainer, sued his former personal manager in the Middle District of Florida. *Id.* at 1282–83. The plaintiff alleged that the defendant wrongfully used the plaintiff's trademarked name and picture on the defendant's website. *Id.* at 1282. The defendant, who lived in Tennessee and created his website in Tennessee, moved to dismiss for lack of personal jurisdiction. *Id.* at 1282–83. The district court granted the motion to dismiss, and the plaintiff appealed. *Id.*at 1283. The Circuit found that a Florida court exercising jurisdiction over the defendant did not violate the Due Process Clause because plaintiff demonstrated that defendant's tortious act was aimed at Florida, because the defendant specifically targeted the plaintiff, whom the defendant knew resided in Florida, and could therefore reasonably anticipate that the injury would occur in Florida. *Id.* at 1288. The defendant could not then "claim surprise at being haled into court [t]here." *Id.*

Here, Ms. Alligood has alleged that BKR, while knowing she lived in Florida, specifically targeted her there by contacting her there and demanding that she wire funds to complete a transaction that BKR had no intention of completing. 2d Am Compl. (Doc. 44), at ¶¶ 3, 21, 23, 99, 101. Thus, following

16

the logic in *Lovelady*, I find that that BKR "purposefully availed itself of the privilege of conducting activities" in Florida, and reasonably could have anticipated being sued here.

Therefore, the Court has personal jurisdiction over BKR.

d. <u>Liability</u>

Ms. Alligood brings 10 claims against BKR: (1) Breach of the Exclusive Guaranteed Rental Agreement and addendums, (2) Breach of the Transfer of Liability Agreement, (3) Civil Conspiracy, (4) Violation of the Florida Telemarketing Act, (5) Violation of the Telemarketing Sales Rule, (6) Fraud in the Inducement of a Contract, (7) Fraud, (8) Violation of Florida's Communications Fraud Act, (9) Conversion, and (10) Violation of Florida's Deceptive and Unfair Trade Practices Act.

At an April 23, 2025 hearing, Ms. Alligood's counsel agreed that a finding of liability on any count that would support an award of an attorney's fee would obviate a finding of liability on all other counts. Doc. 51 (Minutes), at 36:38–38:11. Thus, I consider only Count I– Breach of the Exclusive Guaranteed Rental Agreement and addendums.

Before evaluating whether Plaintiff's allegations sufficiently support its breach of contract claim, I must determine what law governs the claim. A federal court exercising diversity jurisdiction applies the forum state's choice-of-law rules. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d

750, 752 (11th Cir. 1998). As to claims governed by contract, Florida courts generally enforce contractual choice-of-law provisions unless the chosen forum's law contravenes strong public policy.[6] *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000).

Here, the Exclusive Guaranteed Rental Agreement provides that New Jersey law applies to enforce the agreement. Doc. 44-1 ¶ 5. Under New Jersey law, to prove a breach of contract, a plaintiff must demonstrate: a valid contract between the parties, the opposing party's failure to perform an obligation under the contract, and a breach causing the plaintiff to sustain damages. *Nelson v. Elizabeth Bd. of Educ.*, 246 A.3d 802, 812 (N.J. Super. Ct. App. Div. 2021).

First, for a contract to be valid and enforceable there must be a "meeting of the minds" for each material term to an agreement. *Ctr. 48 P'ship v. May Dep't Stores Co.,* 810 A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002). But importantly here, "The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, *i.e.,* their manifested intention, not one secret or undisclosed, which may be wholly at variance with

---

[6] Ms. Alligood's counsel conceded at the April 23, 2025 hearing that there was no public policy concern applicable here that would support a finding that New Jersey law does not apply. Doc. 51 (Minutes), at 21:55–23:12.

the former." *Leitner v. Braen,* 143 A.2d 256, 260 (N.J. Super. Ct. App. Div. 1958).

Here, Ms. Alligood alleges facts demonstrating a valid, enforceable agreement between the parties. 2d Am. Compl. (Doc. 44) ¶¶ 20, 75. On October 1, 2021, BKR Holdings Group, Inc., Sunshine Business Management, Inc., Mr. Losada Moran, and Ms. Alligood executed the Exclusive Guaranteed Rental Agreement, in which they each manifested an intention that Ms. Alligood would lease, in perpetuity, 10 weeks in her timeshare in Mexico to Mr. Losada Moran, that BKR would pay Ms. Alligood $69,000, and that Ms. Alligood would pay a $5,520 commission to Sunshine Business Management. Doc. 44-1. Thereafter, as Ms. Alligood pre-paid reimbursable fees, all four parties executed eight addenda to the agreement. Doc. 44-2. In the final addendum, executed on July 27, 2022, the parties all expressed an intent for Ms. Alligood to receive both the profits of the sale, less the brokerage fee, and reimbursement for the pre-paid fees and the costs associated with those fees. Doc. 44-2 at p. 9. In other words, each party manifested an agreement to the same clear and unambiguous material terms memorialized in the written agreements.

Second, Ms. Alligood alleges facts showing that BKR breached the agreement by "failing to timely close on the subject transaction" despite Ms. Alligood's numerous demands to close. 2d Am. Compl. (Doc. 44) ¶¶ 50, 77.

While the contract did not provide a date certain for closing "is well-settled that where no time is fixed for the performance of a contract, by implication a reasonable time was intended." *Kilarjian v. Vastola*, 877 A.2d 372, 376 (N.J. Super. Ct. Ch. Div. 2004). "What constitutes a reasonable time under New Jersey law is usually an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 285 (3d Cir. 2000) (citation and internal quotations omitted).

Here, Ms. Alligood alleges that, on October 1, 2021, she entered into an agreement to lease, in perpetuity, her 10 annual weeks at her timeshare in Mexico. Doc. 44-1. In this context, it appears reasonable that the parties would have closed the transaction prior to start of 2022, when Ms. Alligood would have been credited her 10 annual weeks for that year. But, instead, BKR delayed the closing, requesting she sign a series of addenda, *see* Doc. 44-1. And, even after the final addendum to the Exclusive Guaranteed Rental Agreement was signed in July 2022, BKR failed to close the transaction. Given the significant expenditure of her own funds preceding each addenda, Ms. Alligood could reasonably expect an expeditious close. However, a year later, in July 2023, when Plaintiff filed this action, BKR still had not closed. Thus, the facts here establish that BKR's failure to close the transaction in the 12 months that

passed between the parties executing the final addendum to the Exclusive Guaranteed Rental Agreement and Ms. Alligood filing this action was unreasonable. *See MicroBilt Corp. v. Certain Underwriters at Lloyd's, London*, No. CV 20-12734 (FLW), 2021 WL 5238995, at \*4 (D.N.J. Nov. 10, 2021) (suggesting eight-month delay in completing transaction was unreasonable). By failing to close the transaction within a reasonable time period, BKR breached the contract.

Finally, Ms. Alligood alleges facts establishing that she was damaged by the breach. Namely, she alleges that, because of the breach, she was not reimbursed the money she pre-paid to close the deal. 2d Am. Compl. (Doc. 44) ¶¶ 46, 50.

Because Ms. Alligood has pleaded facts establishing all requisite elements of breach of contract under New Jersey law, I recommend the Court grant Ms. Alligood's renewed motion for final default judgment to the extent it enter judgment in her favor on Count I.

As to the remaining claims, again, Ms. Alligood conceded at the April 23, 2025 hearing that a finding as to liability on one count—as long as that count would support the award of an attorney's fee—would obviate a finding as to the remaining counts. Doc. 51 (Minutes), at 36:38–38:11. Because, as discussed below, I recommend the Court award damages and an attorney's fee on Count I, I do not consider liability as to the remaining counts and recommend the

21

Court dismiss them without prejudice, based on Plaintiff's representation at the hearing.

　　e. Damages

Because Ms. Alligood's well-pleaded facts support her breach of contract claim against BKR, the Court next turns to damages. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Here, Plaintiff seeks entry of a default final judgment for compensatory damages in the amount of $211,642.49[7]—which is her expected profit from the sale of the timeshare plus the $170,844.54 in reimbursable pre-paid fees—or, if not, in the amount of the $170,844.54 pre-paid fees, an attorney's fee, and pre- and post-judgment interest.

Compensatory Damages. Under New Jersey law, a plaintiff who succeeds on a breach of contract claim may recover compensatory damages. *Donovan v. Bachstadt,* 453 A.2d 160, 165 (N.J. 1982). "Compensatory damages are designed to put the injured party in as good a position as he would have had if performance had been rendered as promised." *Id.* (quotations and

---

[7] While not material to the Court's recommendation here, it appears this calculation is incorrect. The final addendum provides for reimbursement of the $170,844.54 in pre-paid fees and penalties, plus the $69,000 payment for the timeshare lease, less the $5,520 brokerage fee, making the total payment owed to Ms. Alligood $234,324.54. Of course, because Ms. Alligood did not ultimately lease her timeshare, she is not entitled to the $69,000 lease fee. And because she did not pay the $5,520 brokerage fee, neither is she entitled to that fee.

citations omitted). New Jersey law takes a flexible approach to contract damages. *Id.* at 166 ("What the proper elements of damage are depend upon the particular circumstances surrounding the transaction, especially the terms, conditions and nature of the agreement.").

Ultimately, a defendant is liable for "all of the natural and probable consequences of the breach of th[eir] contract." *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993).[8] Here, as a natural and probable breach of the contract, Ms. Alligood lost $170,844.54 in reimbursable pre-paid fees (monies she either wired to BKR and Sunshine, or incurred as a fine or penalty for withdrawing and wiring that money to BKR and Sunshine).

An award of the money Ms. Alligood pre-paid ($170,844.54) is consistent with the terms of the contract, which provides "should this transaction fail to conclude, all deposits/payments . . . shall be refunded in full." Doc. 44-1 ¶ 13.

<u>Attorney's Fee</u>. Additionally, the Exclusive Guaranteed Rental Agreement provides that the prevailing party in litigation originating out of

---

[8] Additionally, in a sales contract, upon a buyer's breach, New Jersey courts do not award the seller the expected profits from the sale; rather, they award the difference between the contract price and the market price at the time the sale should have occurred. *Wood & Selick v. Am. Grocery Co.*, 96 N.J.L. 218, 221 (1921). While Ms. Alligood additionally seeks her expected profits from the timeshare sale, Ms. Alligood still owns the timeshare, Doc. 51 (Minutes), at 18:38–19:28, and has proffered no evidence to suggest that its market value at the time of the anticipated sale was anything different than $69,000. Accordingly, I decline to recommend awarding Ms. Alligood additional damages based on profits she anticipated earning from the sale.

the Exclusive Guaranteed Rental Agreement is entitled to "all legal fees within reason." Doc. 44-1 ¶ 5. Thus, an award of an attorney's fee is appropriate here.

Prejudgment Interest. When a plaintiff is successful on a state law claim brought under diversity jurisdiction, "[w]hether a successful claimant is entitled to prejudgment interest is a question of state law." *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996). In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies. *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)). Here, Florida is the forum state. In Florida, when confronted by a choice-of-law problem, a court will apply the law of the state that governs the state law claim when it deals with the substance of the case and will apply the forum state's law to matters of procedure. *Schein v. Ernst & Young, LLP*, 77 So. 3d 827, n. 2 (Fla. 4th DCA 2012). Courts in this district have repeatedly found that prejudgment interest is a substantive right under Florida Law. *See Torpy v. Unum Life Ins. Co. of Am.*, No. 616CV410ORL22DCI, 2017 WL 5239451, at *6 (M.D. Fla. Oct. 18, 2017); *see also Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 212 F. Supp. 3d 1232, 1238–40 (M.D. Fla. 2016). Thus, under Florida law, the law of the state that governs the state law claim will also govern prejudgment interest. Here, the Court must apply the law of the jurisdiction specified in the Exclusive

24

Guaranteed Rental Agreement, i.e., New Jersey, to determine the right to and amount of prejudgment interest to be awarded on Plaintiff's damages. *See id.* ("[T]he parties' contractual agreement to be bound by Illinois law controls [the plaintiff's] request for prejudgment interest in this case.")

Turning to the application of New Jersey law, in New Jersey, "the award of prejudgment interest on contract and equitable claims is based on equitable principles . . . . and] is a matter of discretion for the trial court." *Cnty. of Essex v. First Union Nat'l Bank*, 891 A.2d 600, 608 (N.J. 2006). In awarding prejudgment interest, "[t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." *Id.* (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 323 A.2d 495, 512 (N.J. 1974)). Absent unusual circumstances, courts should calculate prejudgment interest at the rate specified in New Jersey Court Rule 4:42–11(a). *DialAmerica Mktg., Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 733 (N.J. Super. Ct. App. Div. 2005).

Considering this guidance, I find that Ms. Alligood is entitled to an award of prejudgment interest on her compensatory damages award from the date she filed this lawsuit—July 27, 2023—at which time BKR had breached the Exclusive Guaranteed Rental Agreement by failing to close the transaction,

to the date judgment is entered, calculated at the rate specified in New Jersey Court Rule 4:42–11(a). Such an award will compensate Ms. Alligood for her lost use of the money during the pendency of this litigation.

Post-judgment Interest. In awarding post-judgment interest in a diversity case, courts apply the federal interest statute, 28 U.S.C. § 1961(a), rather than the state interest statute. *See G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir. 1985) (holding that the federal interest statute governs the award of post-judgment interest instead of the Florida interest statute). Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 n.4 (11th Cir. 1991). Accordingly, an award of post-judgment interest at the rate established by 28 U.S.C. § 1961(a) is appropriate here.

## V. Conclusion

For the reasons stated, I respectfully **RECOMMEND** that the Court partially **GRANT** Ms. Alligood's Renewed Motion for Default Judgment (Doc. 48), to the extent that it:

      a. Direct the Clerk to enter final judgment in Ms. Alligood's favor and against Defendant BKR Holdings on Count I in the total amount of $170,844.54, plus prejudgment interest on that amount (calculated at the rate specified in New Jersey Court Rule 4:42–

11(a)) accruing from July 27, 2023 to the date of the judgment, an attorney's fee, and post-judgment interest accruing at the usual and lawful rate for federal court judgments thereafter;

b. Direct Ms. Alligood to move for a specified attorney's fee and costs within the time provided by Federal Rule of Civil Procedure 54 and Local Rule 7.01;

c. Otherwise deny without prejudice Ms. Alligood's Renewed Motion for Default Judgment (Doc. 48), and dismiss without prejudice all counts other than Count I, consistent with Ms. Alligood's consent at the motion hearing.

Submitted for the District Court's consideration in Tampa, Florida, on June 26, 2025.

NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from

the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution,

parties may file a joint notice waiving the 14-day objection period.